IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARSENIO MOLINA,

     Plaintiff,

vs.                                              Civ. No. 97-1080 JC\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Proposed Findings

1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed March 23, 1998.  The Commissioner denied Plaintiff's request for disability insurance benefits.  Plaintiff alleges a disability due to a skin tumor on the right upper thigh. He also claims to suffer from knee pain, facial pain, and a mental impairment.

2.  The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's administrative law judge (ALJ) likewise denied the application.  The Appeals Council reviewed the ALJ's decision and remanded the matter to the ALJ.  The ALJ conducted a second administrative hearing and again denied the application.  The Appeals Council did not review the ALJ's second decision, thus the final decision of the Commissioner is the ALJ's second decision.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  **Id**. (citation omitted).

4.  Plaintiff raises the following allegations of error with respect to the ALJ's decision:  1) the ALJ failed to follow the Appeals Council's mandate to evaluate further the Plaintiff's alleged mental impairment and its impact on his ability to work; 2) the ALJ impermissibly substituted his opinion for that of the psychological consultant, Dr. Morgan; 3) the ALJ did not support with substantial evidence his determination that the Plaintiff can perform light work in spite of the presence of nonexertional impairments nor did the ALJ follow the Appeals Council's mandate with respect to evaluating the Plaintiff's pain; and 4) the ALJ improperly relied upon the vocational expert's (VE) testimony.

5.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  **Id**. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  To determine disability, the Commissioner has established a five step sequential evaluation process.  **Id**.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  **Id**. (citations omitted).

6.  The first four steps of the sequential evaluation process are not at issue in this case.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity (RFC) to do work in the national economy other than past relevant work.  **Id**.  at 1487

2

(citations omitted).  The Medical-Vocational Guidelines (grids) are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various RFC levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

7.  The Plaintiff argues first that the ALJ failed to follow the Appeals Council's mandate to "[g]ive further consideration to the claimant's residual functional capacity, relating to ... mental limitations, if any."  Tr. 296.  The Appeals Council also indicated that the ALJ "may wish to obtain additional evidence and medical source statements about what the claimant can still do despite the impairments."  **Id**.  As a result of the Appeals Council's mandate, the ALJ completed a Psychiatric Review Technique Form.  Tr. 15-17.  In addition, the ALJ discussed the psychological report prepared by Dr. Morgan after the first administrative hearing. Tr. 13. The ALJ, however, did not obtain any further mental reports.

8.  In support of his argument that the ALJ failed to follow the above mandate, the Plaintiff contends that the ALJ's conclusion regarding the alleged mental impairment is not supported by substantial evidence and the ALJ erred by not obtaining any other mental documentation. I find that the fact that the ALJ discussed Dr. Morgan's report satisfies the Appeals Council mandate to consider mental limitations.  **See** Tr. 13.  I further find that the ALJ's conclusion regarding the mental impairment is not relevant to whether the ALJ followed the

Appeals Council's mandate.[1]  Moreover, the Appeals Council did not order the ALJ to obtain

other mental documentation but merely stated that the ALJ "may wish" to obtain such evidence.

Consequently, the ALJ did not err by failing to obtaining further reports.  I, therefore, find that

the ALJ substantially complied with the Appeals Council's mandate concerning the alleged mental

impairment.

     9.   Next, the Plaintiff argues that the ALJ improperly substituted his opinion for that of

Dr. Morgan's.  An ALJ cannot interpose his own medical expertise over that of a physician.

**Kemp v. Bowen**, 816 F.2d 1469, 1476 (10th Cir. 1987), **cited in Winfrey v. Chater**, 92 F.3d

1017, 1022 (10th Cir. 1996).  The ALJ is simply not qualified to analyze bare medical findings in

coming to conclusions regarding a claimant's ability to perform work.  **Rosado v. Sec'y of Health**

**& Hum. Serv.**, 807 F.2d 292, 293-94 (1st Cir. 1986).  However, the law is clear that  the ALJ

has the ability to resolve conflicts in the medical evidence. **Richardson v. Perales**, 402 U.S. 389,

399 (1971); **Casias v. Secretary of Health and Human Services**, 933 F. 2d 799, 801 (10th Cir.

1991).

     10.   According to the Plaintiff, the improper substitution of opinion occurred when the

ALJ stated that the Plaintiff "is able to watch TV, read the newspaper and drive, so I do not

accept Dr. Morgan's checking of 'poor or none' with regard to concentration and attention,

which is inconsistent with the narrative report."  Tr. 13. The ALJ was in essence rejecting Dr.

Morgan's checking of "poor or none" because it was inconsistent with the Plaintiff's ability to

watch TV, read the newspaper, and drive as well as with Dr. Morgan's own narrative report.

---

[1]I will address the issue of whether there is substantial evidence to support the ALJ's
conclusion regarding the mental impairment **infra**.

Noting inconsistencies in the record is not the equivalent of substituting one's medical opinion for another's.  In fact, resolving conflicts or inconsistencies in the medical evidence is acceptable. Accordingly, I find that the ALJ's statement regarding inconsistencies is not an impermissible substitution of a medical opinion.  Whether the ALJ's characterization of the inconsistencies is supported by substantial evidence is another matter which will be taken up **infra.**

11.  The Plaintiff asserts further that the ALJ did not support with substantial evidence his finding that the Plaintiff can perform light work in spite of his mental impairment and pain.  I will address the mental impairment aspect of this assertion first.  The only medical evidence regarding the mental impairment is found in Dr. Morgan's report.  In reviewing Dr. Morgan's report, the ALJ stated that it indicated the Plaintiff "has only a slight restriction of activities of daily living and slight difficulties in maintaining social functioning. He often has deficiencies of concentration, but has never had episodes of deterioration in work-like settings."  Tr. 13.  The ALJ then noted that Dr. Morgan's narrative report is more accurate than the functional report which contains boxes to be checked.  **Id**.  The part of the narrative report which the ALJ cites to states that the Plaintiff "could perform light duty work if his current cognitive problems are solved."  **Id**. (citation omitted).  The ALJ further stated that some of the psychological test responses were not consistent with the interview responses.  As already quoted above, the ALJ did not accept the checking of  the "poor or none" concentration and attention boxes because of their inconsistency with the ability to watch TV, read newspapers and drive as well as with the narrative report.  **Id**. Finally, the ALJ noted that the Plaintiff "cares for all his personal needs, takes care of things around the house, works in his workshop, takes care of his animals and enjoys visiting with relatives on the weekend."  **Id**.

5

12.  At the outset of his report, Dr. Morgan notes that "[t]his man displayed some memory problems during the evaluation, and all facts presented in this report may not be accurate since they were not verified elsewhere."  Tr. 283.  The Plaintiff stated to Dr. Morgan that he can provide his own self care, take care of things around the house, take care of his animals, and visit relatives on the weekends.  Tr. 286.   The Plaintiff indicated that he "occasionally" works in his shop but because of memory loss loses tools.  **Id**.  Dr. Morgan concluded that the psychological tests results are "an accurate measure of his current functioning."  **Id**.  Dr. Morgan then noted that the Plaintiff "had only slight difficulty with immediate recall, but delayed recall was impaired."  **Id**.  Dr. Morgan also observed that the Plaintiff had "difficulty with verbal expressions of his ideas.  He had a difficult time concentrating on test items."  **Id**.  Testing indicated "some mild to moderate cognitive impairment."  **Id**.  Other tests showed that the Plaintiff has a "low average to average intelligence.  He now complains of having difficulty in thinking, memory, and following instructions.  Results appear to corroborate his complaints...."  Tr. 287.  Dr. Morgan also diagnosed the Plaintiff as having moderate depression.  **Id**.  The emotional testing, however, showed some inconsistencies with interview responses because the Plaintiff "had difficulty attending and concentrating to a sustained task over a period of 1 ½ to 2 hours.  Although results were somewhat questionable due to some validity indicators indicating inconsistency, results are interpretable."  Tr. 287-88.  Dr. Morgan further noted that the Plaintiff is "under moderate to severe stress" and that the stress is related to his health problems.  Tr. 288.  Psychological coping and self-concept are "considerably low."  **Id**.  Dr. Morgan recommended that the Plaintiff be referred for treatment of the depression and stress.  **Id**.  Dr. Morgan concluded that the Plaintiff possesses skills with tools, equipment, and mechanical type tasks which may be transferable to

6

"light duty work; however, [the Plaintiff] will need to be involved in a vocational rehabilitation program in order to do this.  In addition, his current cognitive problems will need to be improved."  **Id**.

13.  Dr. Morgan then completed a functional assessment form in which he checked "poor or none" boxes with respect to the ability to deal with work stress; maintain attention/concentration; understand, remember and carry out complex job instructions; and understand, remember and carry out detailed, but not complex, job instructions.  Tr. 291-92.  In the comments section, Dr. Morgan stated that the Plaintiff "is 'slow' in tasks requiring remembering instructions, he makes simple mistakes and takes a long time to learn a new task."  Tr. 293.

14.  In his mental impairment discussion, the ALJ remarked that the Plaintiff has never had an episode of deterioration in a work-like setting even though he has deficiencies of concentration.  Dr. Morgan's narrative report and functional assessment both contain substantial evidence of a severely impaired ability to concentrate.  There is no indication that the Plaintiff has been in a work-like setting since his retirement in 1994 and so has not had an opportunity to have an episode of deterioration in such a setting.  The ALJ then stressed Dr. Morgan's statement about Plaintiff's ability to do light work.  That statement, however, is a conditional one based upon completion of rehabilitation and having the current cognitive problems solved.  There is no evidence that the Plaintiff has undergone rehabilitation or that his cognitive problems have been resolved.  The ALJ then alluded to the inconsistences in the emotional testing.  Those inconsistencies, however, are evidence that the Plaintiff has trouble concentrating and attending to a task for 1 ½ to 2 hours.  Even so, the test results remained interpretable.  The ALJ further cited

to inconsistencies in the checking of the "poor or none" boxes of concentration and attention with the ability to watch TV, read the newspaper, and drive as well as with the narrative report. Contrary to the ALJ's conclusion, the "poor or none" checking is consistent with the narrative report.  According to Dr. Morgan, the Plaintiff could not do light work until he resolved his cognitive problems which presumably included the documented problems with concentration.  As for the TV watching, newspaper reading, and driving, there is no indication of how long or to what extent the Plaintiff engages in these activities.  Finally, the ALJ mentioned several other daily activities the Plaintiff engages in.  The ALJ, however, failed to note that the Plaintiff  loses tools when he tries to work in his shop and that he works in his shop only occasionally.  The ALJ also failed to discuss those portions of Dr. Morgan's report which demonstrated problems with stress, memory, depression, and cognitive problems.  I conclude that for the above reasons the ALJ's mental impairment discussion is not supported by substantial evidence.

15.  The Plaintiff also complains that the ALJ did not support with substantial evidence his finding that the Plaintiff's allegation of disabling pain is not credible and failed to follow the Appeals Council mandate. To analyze properly a claimant's assertion of disabling pain, the ALJ must first determine whether the claimant has established by objective medical evidence that he has a pain-producing impairment.  **Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir. 1992)(citing **Luna v. Bowen**, 834 F.2d 161, 163-64 (10th Cir. 1987)).  If the claimant establishes a pain-producing impairment, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective allegation of pain.  **Id**.  If the ALJ finds that there is a "loose nexus," the ALJ must decide whether after considering all of the objective and subjective evidence, the claimant's pain is in fact disabling.  **Id**. At this point, "the absence of an

objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." **Luna**, 834 F.2d at 165.

16.   The ALJ conceded that the Plaintiff has a pain-producing impairment.  Tr. 13.  The ALJ, however, did not find the Plaintiff  credible for several reasons.  First, the ALJ noted that Dr. Haskins, a treating oncologist, stated that the Plaintiff "is doing well and not having any problems."  **Id.**  Second, the ALJ noted that Dr. Stutzman, another treating oncologist, stated "that the claimant has been doing very well and has no complaints."  **Id**.  Finally, the ALJ stated that the Plaintiff told Dr. Stutzman that he was "doing well and did not have any significant complaints except for some stiffness in the right lower extremity."  **Id**.

17.   Although Dr. Haskins on several occasions noted that the Plaintiff was doing well, Dr. Haskins also observed a lesion in the posterior thigh which was "important" to remove, decreased hearing, and tingling in the feet.  Tr. 278-80.  There is, however, no mention of pain to Dr. Haskins.  Except for some right leg stiffness, the Plaintiff also did not make any complaints of pain to Dr. Stutzman.  Tr. 261-62.  Without an objective medical basis for his allegation of disabling pain, the ALJ is entitled to give little weight to those allegations.  That is precisely what the ALJ in this case did.  Tr. 13.  Consequently, I find that the ALJ's pain determination is supported by substantial evidence.[2]

18.   The Appeals Council mandated that the ALJ "[e]valuate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to

_____

[2]The ALJ also noted that the facial pain is controlled by medication and that right knee problems were treated with a successful arthroscopic surgery.  Tr. 12.

evaluation of symptoms (20 CFR 404.1529) and Social Security Ruling 96-7p." Tr. 296.  The

Plaintiff specifically argues that the ALJ did not follow Social Security Ruling 96-7p which states

that "[b]ecause symptoms, such as pain, sometimes suggest a greater severity of impairment than

can be shown by objective medical evidence alone, the adjudicator must carefully consider the

individual's statements about symptoms with the rest of the relevant evidence in the case record in

reaching a conclusion about the credibility of the individual's statements if a disability

determination or decision that is fully favorable to the individual cannot be made solely on the

basis of objective medical evidence."  The Plaintiff further contends that the ALJ did not follow

Social Security Ruling 96-7p's statement that "individual's statements about the intensity and

persistence of pain or other symptoms or about the effect the symptoms have on his or her ability

to work may not be disregarded solely because they are not substantiated by objective medical

evidence."  As described above, the Plaintiff did not make any statements of pain to his treating

physicians.  Moreover, the ALJ properly gave little weight to the allegations of pain.  The ALJ did

not simply disregard those allegations because of the lack of objective medical evidence.  Under

these circumstances, I find that the ALJ followed Social Security Ruling 96-7p as best he could

and so did not violate the Appeals Council's mandate.

     19.  Lastly, the Plaintiff argues that the ALJ improperly relied upon the VE's testimony.

The Plaintiff contends that the ALJ should not have relied on the VE's testimony that the Plaintiff

can perform sedentary jobs because under the applicable grids a sedentary RFC finding would

lead to a finding of disabled.  The ALJ, in this case, apparently relied on the VE's testimony that

the Plaintiff can perform light work.  Tr. 14, 54.  In her testimony, the VE stated that the Plaintiff

could perform the sedentary job of solderer and the light job of small parts assembler.  Tr. 52, 54.

The small parts assembly job, however, is actually a sedentary job.  Dictionary of Occupational Titles ¶734.687-018.  When applying the grids characteristics set out in this case including an RFC for sedentary work, the grids indicate that there is a disability as a matter of law.  20 C.F.R., Part 404, Subpt. P, App. 2, Table No.1, Rule Nos. 201.09 & 201.10; **Dollar v. Bowen**, 821 F.2d 530, 535 (10th Cir. 1987).  This inconsistency between the VE's testimony and the grids makes the ALJ's reliance upon the VE's conclusion erroneous.

Recommended Disposition

I recommend granting the Plaintiff's Motion to Reverse and Remand for a Rehearing in part.  Specifically, I recommend remanding this matter to the Commissioner so that he shall reconsider the Plaintiff's RFC in light of the mental impairment; and obtain either new VE testimony or properly use the grids to make his determination at step five of the sequential evaluation process.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE

12